**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ALICE MARTINEZ,<br>   Appellant, | DOCKET NUMBER<br>SF-0353-17-0490-I-1 |
|   v. | |
| UNITED STATES POSTAL SERVICE,<br>   Agency. | DATE: February 23, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Stephen Millard</u>, Covina, California, for the appellant.

<u>Tanisha J. Locke</u>, Esquire, Long Beach, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond. A Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which dismissed her restoration appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, FIND that the appellant has shown by preponderant evidence that

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the agency arbitrarily and capriciously denied her restoration, ORDER the agency to conduct a proper job search, and REMAND the case to the Western Regional Office for further adjudication in accordance with this Order.

## BACKGROUND

¶2    The appellant is a Lead Sales and Services Associate (LSSA) at the Glendora Post Office (Glendora) in Glendora, California.  Initial Appeal File (IAF), Tab 7 at 34.  On September 1, 2015, she sustained a compensable injury to her left shoulder.  IAF, Tab 15 at 5.  On September 8, 2015, the appellant's physician completed a CA-Form 17, Duty Status Report (DSR), which permitted the appellant to work with the following restrictions:  no reaching above her shoulder; no pushing or pulling; and no lifting of more than 10 pounds.  IAF, Tab 16 at 5.  The appellant returned to duty, and the Lead Officer in Charge (LOIC) assigned her work that was available within her restrictions.[2]  IAF, Tab 26, Hearing Compact Disc (HCD) (testimony of the LOIC).  The appellant worked under these restrictions until February 2016, when she underwent shoulder surgery.  IAF, Tab 13 at 8, Tab 16 at 6-9.

¶3    Following the appellant's surgery, her physician issued DSRs in March, May, and June of 2016, which assessed the appellant as temporarily totally disabled and unable to work.  IAF, Tab 17, at 5-7.  In an August 1, 2016 DSR, the appellant's physician cleared her to return to work on September 6, 2016, with the following restrictions:  intermittent lifting of up to 5 pounds; and no reaching above her shoulder.  *Id.* at 9.  The appellant's supervisor forwarded the DSR to the agency's injury compensation department, which was responsible for conducting a search for available work within the appellant's restrictions and providing the supervisor instructions concerning the appellant's return to duty.

---

[2] The LOIC handled the matter because both the appellant's first-level supervisor (a customer service supervisor) and her second-level supervisor (Glendora's Postmaster) were on detail to another post office in September 2015.  IAF, Tab 7 at 21, 31.

HCD (testimony of the appellant's supervisor and the Postmaster). The appellant's supervisor did not receive any response from the injury compensation department. *Id.* (testimony of the appellant's supervisor).

¶4 On September 13, 2016, the appellant submitted another DSR from her physician, which cleared her to return to work with the following restrictions: intermittent lifting of 5-10 pounds; other physical activities as required; and 0-1hours of reaching above the shoulder. IAF, Tab 18 at 5. The appellant's supervisor reviewed the restrictions in the September 13, 2016 DSR and concluded as follows: (1) the appellant could not perform the duties of her position due to the limitations on reaching above her shoulder; and (2) there were no other positions available at Glendora for people who could not reach above their shoulders. HCD (testimony of the appellant's supervisor). Accordingly, the appellant's supervisor noted on the DSR that, based on the appellant's restrictions, there was no work available. IAF, Tab 18 at 6. The supervisor also forwarded the DSR to the injury compensation department but again received no response. HCD (testimony of the appellant's supervisor).

¶5 In early November 2016, the appellant contacted her supervisor complaining that she had not been brought back to work. HCD (testimony of the appellant's supervisor). During this conversation, the appellant informed her supervisor that the restrictions set forth in the September 13, 2016 DSR were virtually the same restrictions she had when she returned to work shortly after her injury in September 2015. *Id.*

¶6 The appellant's supervisor provided this information to the Postmaster, who telephoned the injury compensation department, which still had not responded to the DSRs that the supervisor had submitted. *Id.* The injury compensation department instructed the Postmaster to offer the appellant a position as a lobby director. *Id.*

¶7 On November 15, 2016, while the agency was in the process of returning the appellant to work in accordance with the September 13, 2016 DSR, the

appellant submitted another DSR from her physician that cleared her to return to work and indicated that she had a lifting capacity of 20 pounds and could reach above her shoulders 4-6 hours a day. HCD (testimony of the appellant's supervisor); IAF, Tab 18 at 7. The following day, the agency contacted the appellant to return to duty, and she returned to her LSSA position on November 17, 2016. HCD (testimony of the Postmaster).

¶8 On January 24, 2017, the appellant filed an equal employment opportunity complaint alleging that the agency had discriminated against her based on her disability by failing to provide her an accommodation. IAF, Tab 7 at 14. On May 15, 2017, the agency notified the appellant of her Board appeal rights. *Id.* at 13.

¶9 On June 8, 2017, the appellant filed this restoration appeal with the Board and requested a hearing. IAF, Tab 1. The appellant alleged that the agency's failure to restore her to duty from September 13 to November 16, 2016, was arbitrary and capricious. IAF, Tab 5 at 6. In particular, she claimed that the agency did not conduct a job search for work within her medical restrictions during the period in which she was denied work and, therefore, failed to fulfill its obligations under 5 C.F.R. § 353.301(d). IAF, Tab 5 at 6, Tab 14 at 5. The appellant also raised a claim of disability discrimination based on a failure to accommodate. IAF, Tab 1 at 4, Tab 14 at 5.

¶10 After conducting a jurisdictional hearing, the administrative judge issued an initial decision that dismissed the appeal for lack of jurisdiction based on her finding that the appellant failed to prove by preponderant evidence that she had recovered sufficiently to return to duty prior to November 15, 2016, or, alternatively, that she failed to prove that the denial of her request for restoration was arbitrary and capricious. IAF, Tab 27, Initial Decision (ID) at 11-14. The administrative judge also found that, because the Board has no jurisdiction over the appellant's alleged denial of restoration, the Board could not consider her disability discrimination claim. ID at 14.

¶11     The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response in opposition to the petition.  PFR File, Tab 3.

## ANALYSIS

The administrative judge erred in dismissing this appeal for lack of jurisdiction.

¶12     The Federal Employees' Compensation Act and the implementing regulations of the Office of Personnel Management (OPM) at 5 C.F.R. part 353 provide, inter alia, that Federal employees who suffer compensable injuries enjoy certain rights to be restored to their previous or comparable positions.  5 U.S.C. § 8151(b); *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 9 (2016); 5 C.F.R. § 353.301.  Under OPM's regulations, such employees have different substantive rights based on whether they have fully recovered, partially recovered, or are physically disqualified from their former or equivalent positions.  5 C.F.R. § 353.301.  Partially recovered employees are those who "though not ready to resume the full range" of duties, have "recovered sufficiently to return to part-time or light duty or to another position with less demanding physical requirements."[3]  5 C.F.R. § 353.102.

¶13     OPM's regulations require that agencies "make every effort to restore in the local commuting area, according to the circumstances in each case, an individual who has partially recovered from a compensable injury and who is able to return to limited duty."  5 C.F.R. § 353.301(d).  The Board has interpreted this regulation as requiring agencies to search within the local commuting area for vacant positions to which an agency can restore a partially recovered employee and to consider her for any such vacancies.  *See Boutin v. U.S. Postal Service*,

---

[3] It is undisputed that the regulations governing the restoration rights of partially recovered employees apply here.  See ID at 8-9, n.3 (explaining the distinction between partially recovered and permanently disqualified employees and observing that, when more than 1 year has passed since the employee's eligibility for compensation began, a physically disqualified employee has the restoration rights of a partially recovered employee); 5 C.F.R. §§ 353.102, .301(c).

115 M.S.P.R. 241, ¶ 11 (2010).  The Board also has upheld the agency's definition of the local commuting area as being the 50-mile radius surrounding the employee's duty station.  *Id.*, ¶ 16.

¶14      The Board has jurisdiction to review whether an agency's denial of restoration to a partially recovered employee was arbitrary and capricious.  *Bledsoe v. Merit Systems Protection Board*, 659 F.3d 1097, 1103-04 (Fed. Cir. 2011), *superseded in part by regulation on other grounds as stated in Kingsley*, 123 M.S.P.R. 365, ¶ 10; 5 C.F.R. § 353.304(c).  Previously, an appellant alleging a denial of restoration was required to prove Board jurisdiction by preponderant evidence.  *Bledsoe*, 659 F.3d at 1102, 1103-04 (citing *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1330, 1335-37, 1340, 1344 (Fed. Cir. 2006) (en banc)); *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶ 10 (2012).  However, the Board issued a regulation effective March 30, 2015, that adopted a nonfrivolous allegation standard for restoration appeals.  80 Fed. Reg. 4,489, 4,496 (Jan. 28, 2015) (codified in pertinent part at 5 C.F.R. § 1207.57(a)(4), (b)); 79 Fed. Reg. 18,658, 18,659-61 (Apr. 3, 2014).

¶15      Thus, to establish jurisdiction over a claim of denial of restoration as a partially recovered employee for any appeal filed on or after March 30, 2015, an appellant is required to make nonfrivolous[4] allegations of the following:  (1) she was absent from her position due to a compensable injury; (2) she recovered sufficiently to return to duty on a part-time basis, or to return to work in a position with less demanding physical requirements than those previously required of her; (3) the agency denied her request for restoration; and (4) the denial was arbitrary and capricious.  *See Kingsley*, 123 M.S.P.R. 365, ¶ 11; 5 C.F.R. § 1201.57(a)(4), (b).  Once the appellant establishes jurisdiction, she is entitled to a hearing at which she must prove the merits of her restoration appeal,

---

[4] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue.  5 C.F.R. § 1201.4(s).

i.e., all four of the above elements, by a preponderance of the evidence.[5] *Kingsley*, 123 M.S.P.R. 365, ¶¶ 11-12; *Carlos v. U.S. Postal Service*, 114 M.S.P.R. 553, ¶ 7 (2010); 5 C.F.R. § 1207.57(c)(4).

¶16        Because the appellant filed her Board appeal after March 30, 2015, she only was required to make nonfrivolous allegations of jurisdiction to obtain a hearing on the merits.  5 C.F.R. § 1201.57(a)(4), (b).  The record reflects that, although the administrative judge found that the appellant made nonfrivolous allegations of jurisdiction, ID at 10 (citing IAF, Tab 8), she applied the former preponderant evidence standard to determine whether the Board had jurisdiction over the appellant's restoration appeal and dismissed the appeal for lack of jurisdiction based on her finding that the appellant failed to meet that burden.  ID at 9-14.  It was error for the administrative judge to dismiss the appeal on this basis, and we find it necessary to vacate the initial decision.   However, because the administrative judge found that the appellant made nonfrivolous allegations of Board jurisdiction[6] and held a hearing, the record is sufficiently developed for us

---

[5] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

[6] Based on our review of the record, we agree with the administrative judge that the appellant made nonfrivolous allegations of jurisdiction over her restoration appeal.  In evaluating whether the appellant met her jurisdictional burden, we have considered that, while this appeal was pending on review, the Board issued a decision clarifying the jurisdictional standard in partial restoration appeals.  *Cronin v. U.S. Postal Service*, 2022 MSPB 13.  In *Cronin*, the Board found that a denial of restoration is arbitrary and capricious if—and only if—the agency failed to meet its obligations under 5 C.F.R. § 353.301(d).  *Cronin*, 2022 MSPB 13, ¶ 20.  The Board explicitly overruled *Latham* and its progeny to the extent such precedent held that a denial of restoration may be arbitrary and capricious based on an agency's failure to comply with its self-imposed restoration obligations, such as those provided in the agency's Employee and Labor Relations Manual.  *Id.*  Accordingly, to establish jurisdiction under the fourth element of her restoration claim, an appellant must make a nonfrivolous allegation that the agency failed to comply with the minimum requirement of 5 C.F.R. § 353.301(d). Because the appellant in this appeal did not challenge the agency's denial of her restoration on the basis of any agency-specific rules, the Board's decision in *Cronin* does not change the result here.

to decide the restoration appeal on the merits in accordance with 5 C.F.R. § 1201.57.

The appellant proved the elements of her restoration claim by preponderant evidence.

¶17    It is undisputed that the appellant was absent from her position due to a compensable injury. IAF, Tab 13 at 5. Therefore, the appellant proved the first element of her restoration claim by preponderant evidence.

¶18    Turning to the second element of her restoration claim, as previously noted, the September 13, 2016 DSR completed by the appellant's physician stated that the appellant could return to work immediately, but with certain medical restrictions. IAF, Tab 18 at 5. Therefore, the record shows that, at the time of her restoration request on September 13, 2016, the appellant had recovered sufficiently to return to duty on a part-time basis, or to return to work in a position with less demanding physical requirements than those previously required of her. *See Kingsley*, 123 M.S.P.R. 365, ¶ 11. Accordingly, we find that she has demonstrated by preponderant evidence that she satisfies the second element of her restoration claim.

¶19    As for the third element of the appellant's restoration claim, it is undisputed that, when the appellant submitted the September 13, 2016 DSR indicating that she was able to work with restrictions, her supervisor told the appellant that there was no work available at Glendora within her restrictions. IAF, Tab 18 at 6. Thus, we find that the appellant proved by preponderant evidence that the agency denied her request for restoration.

¶20    Regarding the fourth element of the appellant's restoration claim, an appellant can demonstrate that an agency's denial of restoration was arbitrary and capricious if the record establishes that the agency did not examine the entire local commuting area to determine whether there was available work within the appellant's medical restrictions, as required under 5 C.F.R. § 353.301(d). *Scott v. U.S. Postal Service*, 118 M.S.P.R. 375, ¶ 12 (2012). Here, there is no evidence

that the agency complied with the requirements of 5 C.F.R. § 353.301(d). Thus, because the record supports the appellant's unrebutted allegation that the agency did not search within the local commuting area for vacant positions to which the appellant could be assigned, we find that she has demonstrated by preponderant evidence that the agency's denial of restoration from September 13 to November 16, 2016, was arbitrary and capricious. *See Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 21 (stating that when an agency fails to make the effort required under section 353.301(d), the resulting denial of restoration is necessarily arbitrary and capricious, and no further analysis is required).

¶21    In a case like this one, in which the denial of restoration was arbitrary and capricious for lack of a proper job search, the Board has found that the appropriate remedy is for "the agency to conduct an appropriate search within the local commuting area retroactive to . . . the date of the appellant's request for restoration, and to consider her for any suitable vacancies." *Sapp v. U.S. Postal Service*, 82 M.S.P.R. 411, ¶ 21 (1999). The remedy of a retroactive job search will be sufficient to correct the wrongful action and substitute it with a correct one based on an appropriate search. *Corum v. U.S. Postal Service*, 118 M.S.P.R. 288, ¶ 21 (2012). It will not, however, put the appellant in a better position than she was in before the wrongful action because it leaves open the possibility that the agency might still be unable to find an appropriate assignment available as of September 13, 2016. *Id.* The appellant may be entitled to back pay only if the agency's retroactive job search uncovers available work to which it could have restored her. *Id.*

The appellant's disability discrimination claim must be remanded for further adjudication.

¶22    As previously noted, the administrative judge did not address the merits of the appellant's disability discrimination claim because she found that the Board did not have jurisdiction over the restoration appeal. ID at 14. Having concluded that the Board does have jurisdiction over the appellant's restoration appeal, the

Board also must adjudicate the discrimination claim. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 21 (holding that the Board should adjudicate discrimination claims in connection with denials of restoration over which it has jurisdiction). Because resolving this claim could require credibility determinations, and the administrative judge is in the best position to make such determinations, we REMAND the appeal to the regional office for adjudication of the appellant's disability discrimination claim.

## ORDER

¶23     For the reasons discussed above, we REMAND this appeal to the Western Regional Office for further consideration of the appellant's disability discrimination claim and issuance of a new initial decision that addresses this claim. The administrative judge shall exercise discretion in determining how to proceed, including dismissing the disability discrimination claim without prejudice until the agency completes the search we order below and/or any other action committed to the administrative judge's discretion by the Board's regulations that the administrative judge finds appropriate under the unique circumstances of this case.

¶24     In addition, we ORDER the agency to conduct a proper job search retroactive to September 13, 2016, and to consider the appellant for any suitable positions available during that time period consistent with its restoration obligations under 5 C.F.R. § 353.301(d). The agency must complete this action no later than 30 days after the date of this decision.

¶25     In the event the agency's restorative job search uncovers an available position, including her current position, to which it could have restored the appellant, we ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to

calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶26        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶27        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶28        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.


FOR THE BOARD:                                    /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.